Jodi R. Salvati, Petitioner *v.* Berks County Board of Assistance, Department of Public Welfare, Respondent.

,Submitted on briefs February 3, 1983, to Judges ROGERS, BLATT and MACPHAIL, sitting as a panel of three. Reargued January 31, 1984, before President Judge CRUMLISH, JR., and Judges ROGERS, WILLIAMS, JR., CRAIG, MACPHAIL, DOYLE and BARRY.

*Elliot A. Strokoff, Handler and Gerber, P.C.*, for petitioner.

*Mary Frances Grabowski*, Assistant Counsel, for respondent.

OPINION BY JUDGE ROGERS, April 23, 1984:

Jodi Salvati (petitioner) has appealed from an order of the State Civil Service Commission (Commission) upholding her suspension for thirty days without pay from the position of Income Maintenance Worker II with the Berks County Board of Assistance, Department of Public Welfare (DPW). A panel of this court upheld the Commission's order in *Salvati v. Department of Public Welfare*, 76 Pa. Commonwealth Ct. 248, 463 A.2d 1224 (1983). We granted reargument and, having heard such, now reaffirm the order of the panel by this definitive opinion.

The petitioner had been employed by the DPW since 1974. On April 1, 1981, she was arrested and arraigned on criminal charges relating to the possession and sale of controlled substances described in her brief as "a small quantity of marijuana for $100.00 and a small quantity of methamphetamine for $30.00." The petitioner did not report at work on April 2, 1981.

The petitioner's supervisor, the Executive Director of the Berks County Board of Assistance, upon hearing of the petitioner's arrest on April 2, made inquiries of the Reading Police Department and the District Justice before whom the petitioner was arraigned. He learned that the petitioner had been arrested and arraigned on seven charges of possession and delivery of amphetamines and marijuana and criminal conspiracy, some of which constituted felonies. The petitioner's supervisor also consulted with the personnel officer of the County Assistance Office and the Bureau of Labor Relations of the Department of Welfare and reviewed with these authorities the Code of Conduct for State Employes at 4 Pa. Code §7.151. He concluded that he had no choice of action other than to suspend the petitioner,[1] which he did by certified mail on April 2, 1981.

The petitioner did report to work on April 3, 1981 and when, on request, she came to the Executive Director's office she commented, according to that official's unrefuted testimony, "to the effect I guess I've gotten myself in trouble again."

Section 803 of the Civil Service Act (Act), Act of August 5, 1941, P.L. 752, 71 P.S. §741.803, provides

---

[1] Of course, this case is controlled not by the Code of Conduct but by the Civil Service Act. 4 Pa. Code 7.173 provides that "after an employe has been formally charged with criminal conduct . . . which constitutes a felony, such employe shall be suspended without pay. If such charge results in conviction in a court of law, such employe shall be terminated."

that an appointing authority may suspend an employee holding a position in the classified service, for disciplinary purposes, when there is "good cause." While the term "good cause" is not defined in the statute, that section further provides that "[w]hat shall constitute good cause for supension may be stated in the rules," and 4 Pa. Code §101.21(a) provides that:

(a) Good cause for suspension shall be a just cause, such as:

(1) insubordination;

(2) habitual lateness in reporting for work;

(3) misconduct amounting to violation of law, rules or lawful and reasonable departmental orders;

(4) intoxication while on duty;

(5) scandalous or disgraceful conduct while on or off duty which may bring the service of the Commonwealth into disrepute; or

(6) similar substantial reasons.

Our scope of review is limited to a determination of whether or not the necessary findings of fact are supported by substantial evidence, and whether or not the adjudication of the Commission is in violation of constitutional rights or is not in accordance with the law. *Cotter v. State Civil Service Commission*, 13 Pa. Commonwealth Ct. 49, 318 A.2d 390 (1974).

The Commission found that the petitioner's arrest and arraignment on criminal charges constituted "good cause" of the type specified in 4 Pa. Code §101.21(a)(5), "scandalous or disgraceful conduct while on or off duty which may bring the service of the Commonwealth into disrepute."

The petitioner argues, however, that a mere arrest without conviction or independent investigation of the charges by the appointing authority is not good cause

and that judicial precedent has limited the definition of good cause to require that it be job related and touch upon competency and ability, a requirement which petitioner asserts has not been met in this case. *Kanjorshi v. Department of Labor and Industry,* 44 Pa. Commonwealth Ct. 128, 403 A.2d 631 (1979). She also points to the Commission's holding that "the sole basis for the suspension [of the petitioner] was the fact that on April 2, 1981, [she] was arraigned on criminal charges," and argues that the decision of the Commission amounts to a presumption of criminal guilt applicable to civil service employees.

As to the petitioner's first point—that a "mere arrest" cannot constitute good cause—we held just the contrary in *Pennsylvania Department of Justice v. Grant,* 22 Pa. Commonwealth Ct. 582, 350 A.2d 878 (1976) and in *Brown v. Commonwealth Department of Transportation,* 34 Pa. Commonwealth Ct. 461, 383 A.2d 978 (1978). We were quite clear on this point in *Grant:*

> For appellant to be dismissed, it was not necessary for him to be convicted of the crimes with which he was charged.

*Id.* at 586, 350 A.2d at 880. The Commission expressly relies on these cases and the petitioner we believe offers neither reason nor argument why they should not be controlling.[2]

The petitioner also asserts that there is no record evidence showing that her arrest and arraignment af-

---

[2] The issue presented is whether an arrest is to be excluded from the appointing authority's consideration of good cause for discipline because there has not yet been a conviction for the offenses charged. We hold that an arrest may be properly considered. We do not hold that an arrest *per se* is good cause. That issue is not before us. The Commission here found on the basis of the evidence presented that the petitioner's arrest was good cause for discipline because it tended to bring the Commonwealth into disrepute.

fected a legitimate interest of the Department of Public Welfare as her employer. We disagree. Gary Rightmire, the executive director of the Berks County Board of Assistance where the petitioner worked, testified during the Civil Service Commission hearing conducted July 7, 1981:

Q: Do you recall whether or not any publicity followed Mrs. Salvati's arrest?

A: There were a number of newspaper articles and reports on the radio news in the local community of Reading which specifically listed Mrs. Salvati as having been arrested and charged with these various criminal offenses.

Q: Do you recall whether or not your office received any public comments following Mrs. Salvati's arrest?

A: Yes. We received a number of anonymous letters and also we received a number of phone calls both on April 2nd and again on April 3rd.

Q: How would you characterize the public comments you received?

A: Very negative.

. . . .

Q: Could you give us one example of a example of a comment that you received?

A: I received a phone call from a woman who—and I spoke directly with her—who had been previously involved with Mrs. Salvati in the conduct of her actual duties as an Income Maintenance Worker II. The woman indicated that she was quite disturbed by the fact that anyone would be charged with these type of criminal offenses and she would also be allowed to carry responsibility for maintenance duties within the Department. She also made other accusations about Mrs. Salvati and her

conduct, which I suggested she refer to the Police Department. The accusations she made were that Mrs. Salvati had sold drugs to a number of high school students.[3]

Section 803 of the Act provides that suspensions must be for good cause and describes those causes which are not good cause as follows:

No person shall be suspended because of his race, religion, or political, partisan or labor union affiliation.

As we have indicated, civil service regulations at 4 Pa. Code §101.21(a) provide that suspension may follow, *inter alia,* an employee's insubordination, lateness, violation of laws or rules, intoxication, conduct on or off duty which may bring the public service into dis-

---

[3] We disagree with the dissent's description that this testimony was hearsay. The evidence of telephone calls from patrons of the Board of Assistance was introduced not to prove the truth of the substance of the telephone conversations but to prove that the calls were made and were received by Mr. Rightmire and that he acted properly in disciplining the petitioner for conduct tending to bring the Commonwealth into disrepute. As the Superior Court explained in *Bachman v. Artinger,* 285 Pa. Superior Ct. 57, 63, 426 A.2d 702, 705 (1981):

Testimony as to an out of court statement, written or oral, is not hearsay if offered to prove, not that the content of the statement was true, but that the statement was made: Commonwealth v. Samuels, 235 Pa. Superior Ct. 192, 204, 340 A.2d 880, 886 (1975). See also, Commonwealth v. Sampson, 454 Pa. 215, 311 A.2d 624 (1973); Commonwealth v. DiSilvio, 232 Pa. Super. 386, 335 A.2d 785 (1975); Wagner v. Wagner, 158 Pa. Super. 93, 43 A.2d 912 (1945); 6 Wigmore, Evidence §1789 (Chadborn rev. 1976). Furthermore, when the question is "whether a person acted in good faith and with reasonable cause, the information on which he acted is competent evidence even though it consists of declarations made by third persons, and regardless of whether such declarations were in fact true or false." Henry, Pennsylvania Evidence §441 (4th Ed. 1953). See generally Commonwealth v. Wright, 455 Pa. 480, 317 A.2d 271 (1974).

repute, and "similar substantial reasons." The Commission here properly found, on the basis of the record that the petitioner's arrest tended to bring the public service into disrepute.

Moreover, our review of the Commission's action is to determine whether there is substantial competent evidence supporting the Commission's conclusion that the suspension was not for impermissible cause, that is race, religion, political, partisan or labor union affiliation; but that it was for good cause consisting of off duty activity bringing the public service into disrepute. We have previously rejected the notion that good cause in civil service cases is to be equated with the stricter standard of "just cause" typically incorporated in collective bargaining agreements or with the "willful misconduct" standard applied in unemployment compensation cases. *McCain v. Department of Education,* 71 Pa. Commonwealth Ct. 165, 454 A.2d 667 (1983). There is no suggestion that the suspension ordered in this case arising out of the employee's arrest for drug offenses was a pretext for punishment of the appellant for any of the impermissible reasons named in the Act. The circumstances constituted good cause for the thirty-day suspension.

We reaffirm the order of the panel made August 9, 1983.

### ORDER

AND Now, this 23rd day of April, 1984, the order of the panel of this court made August 9, 1983, affirming the order of the State Civil Service Commission in the above-captioned matter, is reaffirmed.

Judge WILLIAMS concurs in the result only.

---

DISSENTING OPINION BY JUDGE CRAIG:

I dissent. My dissenting views are the same as those which were well and fully expressed by Judge

BLATT as a member of the panel of this court which filed the earlier decision. I adopt in full that statement, reading as follows:

[DISSENTING OPINION BY JUDGE BLATT]
I must respectfully dissent.

Hearsay testimony, consisting of allegedly received anonymous letters and phone calls, is the *only* evidence to support the majority's position that the petitioner's arrest was "job-related and touch[ed] upon [her] competency and ability." Pennsylvania Department of Justice v. Grant, 22 Pa. Commonwealth Ct. 582, 585-86, 350 A.2d 878, 880 (1976). And, of course, an adjudication cannot be founded wholly on hearsay. Bleilevens v. Pennsylvania State Civil Service Commission, 11 Pa. Commonwealth Ct. 1, 312 A.2d 109 (1973).

Furthermore, I believe that the instant case is factually distinguishable from the cases relied on by the majority. Brown v. Department of Transportation, 34 Pa. Commonwealth Ct. 461, 383 A.2d 978 (1978) involved job-related charges bearing directly on an employee's status as a security guard, and Grant involved an employee holding a position as a prison guard in a state correctional institution, a position which we held was "highly sensitive" and which required those who held it to avoid even the appearance of impropriety. In contrast, the record in the instant case is devoid of competent evidence establishing that the petitioner's arrest had any connection to or bearing on her job, or that her position was at all "sensitive".

Due to the absence of competent evidence in the record, I do not believe that the Commis-

638

sion's findings are supported by substantial evidence, and I would therefore reverse the order of the Commission.